## Tyree SMITH *v.*
## The Honorable Timothy FOX, Circuit Judge

CR 04-71                                                 193 S.W.3d 238

### Supreme Court of Arkansas
### Opinion delivered September 16, 2004

*William R. Simpson, Jr.*, Public Defender, by: *Sharon Kiel*, Deputy Public Defender, for Appellant.

*Mike Beebe*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

Tom Glaze, Justice. This case comes before us as a petition for writ of prohibition, or in the alternative, writ of certiorari or writ of mandamus. We are asked to decide whether a federal mental evaluation is sufficient to satisfy Arkansas' statutory scheme governing such evaluations, found in Ark. Code Ann. § 5-2-305 (Supp. 2003). Procedurally, the State also questions whether the petitioner Tyree Smith has standing to obtain any one of the extraordinary writs he seeks from our court in deciding if the trial court erred in its interpretation and application of § 5-2-305. The State submits that Smith's remedy is an appeal. Because we ultimately hold Smith does have standing to seek and obtain a writ of certiorari, we will first consider the facts leading to Smith's filing of this original action and then address the core issue requiring this court's interpretation and application of § 5-2-305 in this case.

On October 5, 2002, Smith was arrested by Little Rock police and charged with aggravated robbery and theft in Pulaski County Circuit Court. The charges stemmed from Smith's involvement in an aggravated robbery at a Bank of America branch in Little Rock. He was also subsequently indicted on federal bank armed robbery charges arising from the same crime. The federal district court ordered Smith to undergo a mental-health evaluation to determine both his competency to stand trial and his sanity at the time of the offense. That court sent Smith to the federal prison system's Federal Medical Center in Texas, where he was evaluated and deemed both competent to stand trial and sane at the time of the robbery. The federal mental evaluation on Smith was given to the federal district judge on June 26, 2003. Subsequently, however, the federal authorities asked the federal district court to dismiss the federal charges against Smith; the federal court granted the dismissal on July 14, 2003.

On July 28, 2003, Smith appeared in Pulaski County Circuit Court for plea and arraignment on the State's aggravated robbery and theft charges and was appointed counsel. On August 8, 2003, Smith pled not guilty by reason of mental disease or defect, and requested a mental examination pursuant to Ark. Code Ann. § 5-2-305(b) (Supp. 2003). The circuit court took Smith's motion under advisement in order to consider whether the June 26, 2003, federal psychiatric exam complied with the state's requirements under § 5-2-305.

On August 20, 2003, the State tendered the federal psychiatric report to Smith's counsel and the trial judge. At a hearing on September 2, 2003, the State argued the federal report met all the

requirements of § 5-2-305; Smith disagreed and objected to the trial court's adopting the report. The trial court ruled in the State's favor and found Smith fit to proceed to trial. On January 13, 2004, the trial judge denied Smith's request for reconsideration. Smith then sought a continuance because he was unable to obtain the full documentation of the federal mental health evaluation from federal authorities. Smith's request was also denied by the state court, even though the federal district court, by a December 30, 2003, order, found it was without jurisdiction to compel the Federal Bureau of Prisons to produce records for use in the state court proceeding. After denying Smith's motion for continuance, the trial court proceeded to set the trial date for January 22, 2004. Smith responded by petitioning our court for either an extraordinary writ of prohibition, certiorari, or mandamus. We granted the stay and requested briefs on the two issues raised by the parties.

As noted above, we will first address whether the trial court erred when it deemed the federal mental evaluation sufficient to satisfy Arkansas' mandatory statutory scheme governing state mental evaluations found under § 5-2-305. When reviewing issues of statutory interpretation, the basic rule is to give effect to the intention of the legislature, making use of common sense, and assuming that when the legislature uses a word that has a fixed and commonly accepted meaning, the word at issue has been used in its fixed and commonly accepted sense. *Yamaha Motor Corp. v. Richard's Honda Yamaha,* 344 Ark. 44, 38 S.W.3d 356 (2001); *State v. Joshua,* 307 Ark. 79, 81, 818 S.W.2d 249, 250 (1991). This court more recently reviewed its standards for statutory review in *Cave City Nursing Home, Inc. v. Arkansas Dept. of Human Services,* 351 Ark. 13, 89 S.W.3d 884 (2002), stating as follows:

> When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. When a statute is clear, however, it is given its plain meaning, and this court will not search for legislative intent; rather, that intent must be gathered from the plain meaning of the language used.

*Id.* at 21-22, 89 S.W.2d at 889. As a rule, criminal statutes are strictly construed with any doubts resolved in favor of the accused. *Puckett v. State,* 328 Ark. 355, 358, 944 S.W.2d 111, 113 (1997).

Here, the relevant statute, § 5-2-305, provides in pertinent part the following:

(a) Whenever a defendant charged in circuit court:

(1) Files notice that he intends to rely upon the defense of mental disease or defect, or there is reason to believe that mental disease or defect of the defendant will or has become an issue in the cause; or

(2) Files notice that he will put in issue his fitness to proceed, or there is reason to doubt his fitness to proceed, *the court*, subject to the provisions of §§ 5-2-304 and 5-2-311, *shall immediately suspend all further proceedings in the prosecution* . . .

(b) Upon suspension of further proceedings in the prosecution, *the court shall enter an order:*

(1) *Directing that the defendant undergo examination and observation by one or more qualified psychiatrists at a local regional mental health center or clinic;* or

(2) Appointing at least one (1) qualified psychiatrist to make an examination and report on the mental condition of the defendant; or

(3) Directing the Director of the Arkansas State Hospital to examine and report upon the mental condition of the defendant; or

(4) Committing the defendant to the Arkansas State Hospital or other suitable facility for the purpose of the examination for a period not exceeding thirty (30) days, or such longer period as the court determines to be necessary for the purpose.

(Emphasis added).

Plain language of § 5-2-305(a) dictates that, when a defendant announces his intention to rely on the defense of mental disease or defect, or where he places his fitness to proceed in issue, the court "*shall immediately suspend* all further proceedings in the prosecution." *Camargo v. State*, 346 Ark. 118, 127, 55 S.W.3d 255, 261 (2001) (emphasis added). The word "shall" is mandatory. *See Smith v. State*, 347 Ark. 277, 61 S.W.3d 168 (2001); *Middleton v.*

*Lockhart*, 344 Ark. 572, 43 S.W.3d 113 (2001). An application of our plain language and strict construction standards to § 5-2-305 compels the conclusion that the circuit court judge acted in derogation of the law by failing to suspend the proceedings against Smith until Smith had undergone a psychiatric examination at a local regional mental health center or clinic or the Arkansas State Hospital.

The State argues that § 5-2-305 requires only substantial compliance with its provisions. In support of its argument, the State cites to *Ball v. State*, 278 Ark. 423, 646 S.W2d. 700 (1983), and *Hubbard v. State* 306 Ark. 153, 812 S.W.2d 107 (1991). However, those two cases are distinguishable from the present case. In *Ball*, this court agreed that two letters met all the statutorily required information, although they were not written in the language of the statute. In *Hubbard*, this court relied on the *Ball* case for the proposition that a trial court need only find that the requirements of § 5-2-305 were substantially complied with. This court determined Hubbard's examination conducted by a psychologist, rather than a psychiatrist, substantially met the requirements of § 5-2-305, which clearly provides that, when a defendant raises the defense of mental disease or defect, *it shall immediately suspend* all further proceedings, and shall enter an order directing that the defendant undergo a mental evaluation as specified in § 5-2-305(b)(1). In the present case, however, there was not even substantial compliance with the statute, as the trial court disregarded the clear, mandatory language of the statute and failed to suspend further proceedings and order a mental evaluation.

Having determined the trial court erred in failing to follow the mandatory dictates of § 5-2-305, we now turn to the State's argument that Smith requested the wrong remedies. First, we note that the trial court's order, ruling that the federal mental report met the requirements of § 5-2-305, is not a final order from which Smith could appeal. For a judgment, decree, or order to be appealable, it must dismiss parties from court, discharge them from the action, or conclude their rights to the subject matter in the controversy. *See Ford Motor Company v. Harper*, 353 Ark. 328, 107 S.W.3d 168 (2003) (where no final or otherwise appealable order is entered, this court lacks jurisdiction to hear the appeal); *see also* Ark. R. App. P.—Civ. 2.

■■ We do, however, agree with the State that a writ of prohibition is inappropriate in the present situation, because such a writ lies only when a trial court is wholly without jurisdiction. *See Conner v. Simes*, 355 Ark. 422, 139 S.W.3d 476 (2003). Here, the circuit court unquestionably has subject matter jurisdiction to hear a felony criminal case. The State further argues that Smith's request for a writ of mandamus is inappropriate because such a writ is a discretionary remedy which will be issued only when the petitioner has shown a clear and certain legal right to the relief sought, and there is no other adequate remedy. *Saunders v. Neuse*, 320 Ark. 547, 898 S.W.2d 43 (1995). Moreover, the writ of mandamus will not lie to control or review matters of discretion, but will lie only to compel the exercise of the discretion. *Id.* Here, the trial court exercised its discretion when it refused to suspend the proceedings against Smith and denied him the right to undergo a state examination mandated by § 5-2-305.

■ However, the State is wrong in arguing Smith is not entitled to a writ of certiorari in this case. This court has specifically stated that a writ of certiorari is an extraordinary writ, which will be granted only when there is a lack of jurisdiction, an act in excess of jurisdiction on the face of the record, or when the proceedings are erroneous on the face of the record. *Arkansas Dep't of Human Servs. v. Collier*, 351 Ark. 506, 516, 95 S.W.3d 772, 777 (2003). These principles apply when a petitioner claims that the lower court did not have jurisdiction to hear a claim or to issue a particular type of remedy. *Arkansas Dept. of Human Services v. Collier*, 351 Ark. 506, 516, 95 S.W.3d 772, 777 (2003); *Kraemer v. Patterson,* 342 Ark. 481, 485, 29 S.W.3d 684, 686 (2000). However, certiorari may not be used to look beyond the face of the record to ascertain the actual merits of a controversy, to control discretion, to review a finding upon facts or to review the exercise of a court's discretionary authority. *Lenser v. McGowan*, 358 Ark. 423, ____ S.W.3d ___ (2004).

■ While this court has recognized that certiorari is not an appropriate remedy to use to reverse a trial court's discretionary authority, *see Arkansas Dept. of Human Services v. Collier, supra*, certiorari is appropriate when a trial court exercises discretionary authority when no such authority exists. For example, in *Collier, supra*, this court concluded that Judge Collier exceeded her statutory authority by ordering the placement of a fetus in the custody

of Department of Human Services and requiring that department to render prenatal care. *Id.* at 523, 95 S.W.3d at 782. Because the relevant statutes did not permit Department of Human Services to exercise jurisdiction over a fetus, Judge Collier's actions were determined to be in direct violation of that statute; therefore, her order constituted a plain, manifest, clear, and gross abuse of her discretion. *Id.* Here, the circuit judge's decision to fashion his own remedy by adopting the federal psychiatric examination is in clear contradiction of the plain language of § 5-2-305(b), and is likewise a gross abuse of his discretion that warrants the granting of a writ of certiorari.

Accordingly, certiorari is granted. The trial court is ordered to strictly comply with the language in § 5-2-305 that mandates suspension of the proceeding against Smith and directs a state mental examination.